Stephen VOYLES, et al., Respondents,

v.

Brian VOYLES, Appellant.

No. ED 96913.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 20, 2012.

Richard J. Keyes, St. Louis, MO, for appellants.

Bradford L. Stevens, Robert A. Useted, David A. Castleman, Kohn, Shands, Elbert, Gianoulakis & Giljum, LLP, St. Louis, MO, for respondents.

KENNETH M. ROMINES, J.

### Facts and Procedural History

Appellant Brian Voyles and his three siblings, Respondents Stephen, Kathy, and Terri, are beneficiaries of the ELVE Trust. Brian filed a petition on 4 September 2007 seeking an accounting, removal of Stephen as Trustee, and appointment of a new trustee. The parties attended a mediation session on 2 February 2009, and thereafter signed a memorialized, handwritten document drafted by the mediator entitled "Terms of Settlement" ("Mediation Settlement Agreement"). The Mediation Settlement Agreement specifically provided:

1. $475,000 paid [to the Brian Trust] within 90 days of 2 February 2009.

2. Spring Valley Ranch deeded by general warranty deed [to Brian] within 30 days

3. Brian's reported income for 2008 not to exceed $6000.

4. Mutual releases and lawsuit dismissed with prejudice.

5. Brian gives up all further interest in the ELVE Trust and represents he has no assets in trust.

6. All parties will do anything reasonably necessary to effectuate this agreement, including being removed from accounts, if necessary.

Stephen's attorney emailed Brian's attorney drafts of formal settlement documents on 18 March 2009. In correspondence dated 24 March 2009, Brian's attorney objected to the terms in this draft that provided (i) Stephen would individually purchase Brian's share in ELVE Trust, and (ii) Stephen, as sole trustee, would be released from liability under a separate trust, the "Stephen M. Voyles Living Trust." Brian also requested to add terms that addressed the distribution of income retained by the ELVE trust to Brian.

On 27 March 2009, Respondents delivered to Brian title to the Spring Valley Ranch, and stated that they were prepared to deliver the $475,000 upon execution of the formal settlement documents. Brian did not execute the documents, and Respondents filed a motion to enforce the settlement on 16 June 2009. The trial court ordered the parties to return to mediation, which they failed to do. As a result, the trial court thereafter dismissed the entire case without prejudice. No party appealed the dismissal.

Respondents filed a new Petition for Specific Performance to Enforce Settlement on 16 February 2010; Brian filed a motion to dismiss the petition on 18 June 2010, as well as a counterclaim for an accounting of the ELVE Trust, removal of Stephen as Trustee, and appointment of a new trustee. On 19 July 2010, Respondents filed a motion for summary judgment on the petition for specific performance and a motion to dismiss or stay or grant specific performance on Brian's counter-claim. The trial denied the motion to dismiss on 13 August 2010.

Brian answered the petition for specific performance on 16 September 2009, and responded to the motion for summary judgment on 27 September 2009. In answering the motion for summary judg-

ment, Brian specifically admitted that the parties entered an "enforceable settlement agreement with respect to all claims between them that were asserted or could have been asserted in the Underlying Lawsuit." Brian also admitted that in the underlying lawsuit, Respondents were attempting to enforce terms not contained in the Mediation Settlement Agreement. He admitted that the dispute over these terms led to dismissal of the underlying lawsuit, and claimed that there was no Settlement Agreement that could be enforced.

The trial court granted summary judgment in favor of Respondents on 10 December 2010 finding that there was no genuine issue of material fact that the parties entered into a binding and enforceable settlement agreement. The trial court entered its final judgment on 6 May 2011. In relevant part, the trial court ordered the terms of the settlement agreement be enforced, such that (i) Stephen, individually, would pay Brian Trust $475,000 ("Settlement Amount"); and (ii) upon receiving the Settlement Amount, Brian would be deemed to have relinquished and transferred all interest in the ELVE Trust to Stephen, individually and as Trustee. Aggrieved, Brian now appeals.

### Standard of Review

This Court reviews a trial court's grant of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record should be reviewed in the light most favorable to the party against whom summary judgment was entered. *Id.* Summary judgment is appropriate only where there is no genuine issue of material fact such that one party is entitled to judgment as a matter of law. *Id.* at 380. Where the trial court grants summary judgment without articulating

any reason why it was granted, we will affirm if summary judgment is appropriate under any theory. *Tonkovich v. Crown Life Ins. Co.*, 165 S.W.3d 210, 215 (Mo. App. E.D.2005).

## Discussion

Brian raises two points on appeal. First, he argues that the trial court erred in denying his motion to dismiss the petition for specific performance because the circuit court had already dismissed the petition in the underlying suit. In the alternative, he argues that the trial court erred in granting the Respondent's motion for summary judgment because there were disputes as to the terms of settlement. We disagree.

### I.

█ In Brian's first point on appeal, he specifically states that his motion to dismiss should have been granted because Respondents "never called up their motion to enforce settlement agreement in the underlying lawsuit so when the underlying lawsuit was dismissed, that cause of action was treated as a nullity therefore mooting the settlement agreement." It appears that Brian is arguing that because the trial court dismissed the underlying suit without prejudice, the settlement agreement itself is no longer valid. This is not logical and against the very language of the rule on dismissals.

Rule 67.01 provides that a "dismissal without prejudice permits the party to bring another civil action for the same cause, unless the civil action is otherwise barred." In the underlying case, Respondents and Brian disagreed about the exact terms of the settlement agreement and whether such terms could be enforced. Respondents filed a motion to enforce the settlement agreement on 16 June 2009 and because the parties failed to attend further mediation, the trial court dismissed the entire case without prejudice. However, there is no authority to suggest that a valid, enforceable agreement is somehow "nullified" merely by a dismissal without prejudice. Quite the opposite, Rule 67.01 specifically permits bringing another cause of action to enforce the agreement. As such, the trial court did not err in denying Brian's motion to dismiss in the present action.

### II.

█ In Brian's second point on appeal, he argues that the trial court erred in granting Respondents' motion for summary judgment because Respondents abandoned the settlement agreement by requesting additional terms before paying the $475,000 to Brian. In the alternative, he argues that there is a dispute of material fact as to the terms of the settlement. He cites to the disagreement over whether (i) "Stephen as sole trustee of his trust as Stephen's Voyles' trust" would be released from liability; and (ii) Brian agreed to sell his interest to Stephen, individually.

█ Initially, we note that the question of whether the parties entered into an enforceable settlement agreement is governed by contract law. *Emerick v. Mutual Benefit Life Insurance Co.*, 756 S.W.2d 513, 518 (Mo. banc 1988). To show a legal, valid settlement agreement, one must prove the essential elements of a contract: offer, acceptance and consideration. *Tinucci v. R.V. Evans Co.*, 989 S.W.2d 181, 184 (Mo.App. E.D.1998). The creation of a valid settlement agreement requires a meeting of the minds and a mutual assent to the essential terms of the agreement. *Ste. Genevieve County Levee Dist. v. Luhr Bros., Inc.*, 288 S.W.3d 779, 783 (Mo.App. E.D.2009). By each party's admission in their pleadings, in February 2009, they entered into an enforceable settlement

agreement evidenced by the Mediation Settlement Agreement.

■ Brian first argues that this agreement ceased to be enforceable when Respondents abandoned it. Abandonment of an agreement may be accomplished by express mutual consent or implied consent through the actions of the parties. Actions indicative of implied consent must be positive, unequivocal and inconsistent with an intent to be further bound by the contract. *Neiswonger v. Margulis*, 203 S.W.3d 754, 760 (Mo.App. E.D.2006). The only evidence of abandonment that Brian cites is Respondents' correspondence on 27 March 2009 stating that they were prepared to deliver the $475,000 upon execution of the formal settlement documents. This statement is not inconsistent with an intent to be further bound by the contract given that they were specifically prepared to deliver the funds as stated in the Mediation Settlement Agreement. Furthermore, on this same date Respondents' transferred title of the Spring Valley Ranch to Brian. Given these facts, there is no support in the record that Respondents abandoned the agreement.

■ Brian next argues that summary judgment was improper because the terms of the settlement agreement were disputed. He cites to the disagreement over whether (i) "Stephen as sole trustee of his trust as Stephen's Voyles' trust" would be released from liability; and (ii) Brian agreed to sell his interest to Stephen, individually.

■ A contract will be valid and enforceable even if some terms may be missing or left to be agreed upon as long as the essential terms are sufficiently definite to enable the court to give them exact meaning. *Vulgamott v. Perry*, 154 S.W.3d 382, 390–91 (Mo.App. W.D.2004). The terms of the Mediation Settlement Agreement established the essential provisions of the agreement between the parties—namely that Brian would release all interest in the ELVE Trust in exchange for $475,000 and title to the Spring Valley Trust, and that all parties would be released from liability. Though the Mediation Settlement Agreement did not supply whether Stephen or the ELVE Trust would pay the $475,000 this does not render the entire agreement unenforceable as the court is capable of supplying this provision based on the evidence in the record. As for the issue of whether Stephen would be released in his capacity as trustee of Stephen Voyles Trust, Respondents' have agreed to redraft the release to eliminate the provision.

Based on the foregoing, the parties entered into a binding enforceable settlement agreement on 29 February 2009 that remained valid for the duration of this litigation. Therefore, the trial court did not err in denying the motion to dismiss and granting the motion for summary judgment on the petition for specific enforcement of the settlement agreement. The judgment of the trial court is affirmed.

KATHIANNE KNAUP CRANE, P.J. and LAWRENCE E. MOONEY, J., concur.