

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION THREE</u>

| | | |
|---|---|---|
| SANSONE LAW, LLC, | ) | No. ED107525 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| J&M SECURITIES, LLC, | ) | Honorable Michael T. Jamison |
| | ) | |
| Defendant/Appellant. | ) | Filed:  October 8, 2019 |

<u>Introduction</u>

J&M Securities, LLC (Appellant) appeals from the trial court's judgment granting the Motion to Enforce Settlement and For Sanctions filed by Sansone Law, LLC (Respondent) and dismissing all claims with prejudice.  We reverse and remand to the trial court to reinstate Appellant's and Respondent's claims for further proceedings.

<u>Factual and Procedural Background</u>

Respondent filed a three-count petition against Appellant alleging Respondent had represented Appellant and had, at Appellant's request, provided legal services to Appellant. Respondent further alleged Appellant received the legal services but failed to pay for them. The petition against Appellant alleged (1) quantum meruit, (2) fraudulent misrepresentation, and (3) slander/libel.  Respondent requested relief in excess of $25,000 in compensatory damages, as well as attorney's fees and costs.

Appellant filed a partial answer, along with affirmative defenses, and eleven counterclaims. In the counterclaims, Appellant alleged Respondent (1) breached the legal services contract, (2) was unjustly enriched, (3) committed legal malpractice, (4) breached its fiduciary duty, (5) tortiously interfered with a business expectancy, (6) illegally evicted Appellant, (7) abused process in evicting Appellant, (8) failed to return Appellant's security deposit, (9) committed conversion of Appellant's office property, (10) was unjustly enriched by the office property, and (11) was unjustly enriched by joint legal services. Appellant also filed a motion to dismiss Respondent's prayer for attorney's fees, along with Count II of Respondent's petition, fraudulent misrepresentation, for failing to state a claim upon which relief could be granted.

Following Appellant's answer, the trial court entered an order that stated:

> On application of the parties, presented ex parte, by consent of the attorneys, by Talmage Newton, the Clerk is instructed to withdraw the partial answer, affirmative defenses and counterclaims filed by J&M Securities, LLC. Sansone Law has agreed not to default J&M Securities pending further discussions of the parties.

A case management conference was held in January 2017. The trial court entered an order following the hearing that stated, "Discovery pending, parties discussing resolution of discovery issues. [Case management conference] reset for March 31, 2017 @ 11 am."

On the day following the case management conference, Respondent filed a motion to compel Appellant to fully answer and respond to its interrogatories and request for production. The motion to compel was set for hearing. Prior to the scheduled hearing on the motion to compel, Appellant filed its revised partial answer, affirmative defenses, and counterclaims.

Respondent filed a memorandum to cancel the hearing on the motion to compel, which the trial court judge signed.

Following the cancellation of the motion to compel hearing, Respondent filed a motion to dismiss Appellant's counterclaims. The trial court set both Appellant's and Respondent's motions to dismiss for hearing. On the day of the hearing, the trial court entered an order that stated, "Both parties ordered to amend claims within 30 days or each parties [sic] motion to dismiss is granted."

Appellant and Respondent did not amend their respective claims within 30 days, but instead jointly requested the trial court extend the deadline for filing amended pleadings for an additional 30 days. The trial court granted the parties' request.

Thirty days later, Appellant and Respondent jointly requested a second extension of an additional seven days for filing the amended pleadings.

Seven days later, Appellant filed its amended partial answer, affirmative defenses, and counterclaims alleging: (1) legal malpractice (Hefley case), (2) legal malpractice (Scharafinski case), (3) legal malpractice (case abandonment), (4) unjust enrichment (case abandonment), (5) breach of fiduciary duty, (6) unjust enrichment (joint legal services), (7) breach of contract (illegal eviction), (8) abuse of process (illegal eviction), (9) unjust enrichment (security deposit), (10) conversion (office property), and (11) unjust enrichment (office property).

Respondent did not file its amended petition, but rather filed a motion for extension, as well as its Motion to Enforce Settlement and For Sanctions. Respondent's motion for extension requested the trial court extend the deadline for filing its amended petition until after the motion to enforce settlement was heard. The request stated in part:

> The parties agreed to an extended deadline of 7.17.2017 to file amended petitions that had been previously ordered as settlement had been reached. However, on July 17, 2017 counsel for Defendant abruptly claimed no settlement and offered only a dismissal <u>without</u> prejudice of all claims.

3

Respondent's Motion to Enforce Settlement and For Sanctions claimed the parties previously agreed to settle all pending claims and counterclaims by mutual release of all parties for all pending claims. The motion further requested attorney's fees be awarded to Respondent for the time spent on enforcing the settlement.

Respondent filed a notice of hearing stating the motion to enforce settlement would be called for hearing on August 8, 2017. On July 26, 2017, Respondent filed an amended notice of hearing stating the motion would be heard on August 16, 2017. On August 16, 2017, the trial court entered an order stating, "By consent, the parties pass hearing on plaintiff's motion to compel/enforce settlement from today to 8-25-2017 @ 10:30 AM."

On August 24, 2017, Respondent filed a memorandum regarding the hearing scheduled for the following day, which stated, "Plaintiff hereby passes its hearing on Plaintiff's Motion to Enforce Settlement set for 8.25.2017 at 10:30 am."

On August 29, 2017, Appellant filed a motion for default judgment against Respondent. Appellant's motion stated while it had agreed to stay the filing deadline for Respondent for any responsive pleadings to the counterclaims until hearing on the motion to enforce settlement, it agreed to do so with the expectation that the motion would be heard in a timely fashion as agreed to by the parties. Appellant's motion went on to state Respondent unilaterally cancelled the August 25, 2017 hearing, which had not been rescheduled, and further that Respondent's counsel had not responded to a request to reset the pending motion.

Respondent filed a motion to strike Appellant's default judgment motion and for sanctions. Along with its motion, Respondent filed an amended notice of hearing that set the motions to enforce settlement, strike the default motion, and for issuance of sanctions for hearing on September 12, 2017.

On September 12, 2017, the court entered an order that denied Appellant's motion for default judgment and reset the hearing on Respondent's motion to enforce settlement to September 27, 2017.

Motion to Enforce Settlement

On September 27, 2017, the hearing on Respondent's Motion to Enforce Settlement and For Sanctions began with the following discussion:

> The Court: [I]n a previous discussion here, we decided that the case will be presented as follows. ***I think the parties are in agreement that for the most part, this case is one where the evidence is based upon the exchange of emails. So the emails, I believe, will be submitted and offered as evidence in this case, and then we'll hear the arguments of the respective parties.*** Then we'll set a date for the filing of findings of fact, conclusions of law and proposed order. So with that, I believe we are ready to proceed. So, Mr. Pedroli.[1]

> Pedroli: Your Honor, if you don't mind, I think it might be a good idea to memorialize, also, sort of what happened this morning. We came here intending for this to be an evidentiary hearing where the lawyers would all testify as to the emails, the telephone conversations, and even some in-person discussions with regard to the settlement agreement. That's what we thought we were doing.
> At the last minute, Mr. Newton[2] cited Ethical Rule 4.37 – or 4-37, saying that he feels as if he can't, without an opinion, testify in this case and act as counsel.
> Is that correct?

> Newton: That is correct, Your Honor. I believe that the Ethical Rule 4-3.7 prohibits me in this proceeding from both being lead advocate for Mr. Metzger and his companies as well as a key witness to the facts that are intended to be put on.

> The Court: Thank you.

> Pedroli: And although we disagree with that, ***we have agreed to proceed with the emails and the telephone conversation as our primary evidence*** in the motion to enforce settlement. So at this point do you want to just --

> Newton: Your Honor, for purposes of making the record complete on this point, I would note that ***plaintiff has been offered by defense counsel the opportunity, subject to the Court's discretion, to reschedule this matter if they***

---

[1] Mark Pedroli, co-counsel for Respondent.
[2] Talmage Newton, co-counsel for Appellant.

5

*__felt the need to do so, and have declined that opportunity and elected to proceed on the documentary record.__*

> The Court: Okay. Well, that being the case, but I understand – Mr. Sansone, Mr. Pedroli, correct me if I'm wrong, but you are proceeding because this matter has been scheduled any number of times, and I believe it's your position that it's time to have this matter heard and the Court to make some decisions.

> Pedroli: We are proceeding because my client's opinion is that these last minute changes and continuances are vexatious, and it demonstrates their inability to settle a case that they have already settled and agreed to before. We want to get it over with. We believe this case was settled a long time ago, and *__we believe the documentary evidence should be enough for Your Honor to make that decision that a settlement was agreed to. So that being the case, we are going to admit the emails and the telephone transcript at this time.__*

The hearing proceeded, and both Appellant and Respondent submitted exhibits into evidence and made legal arguments regarding whether a settlement was agreed to on June 9, 2017. The evidence admitted at the hearing consisted of the following:

<u>June 9, 2017 – Voicemail</u>

On June 9, 2017, Appellant's counsel, Newton, called Respondent's counsel, Ben Sansone (Sansone), and left a voicemail. A transcription of the voicemail was submitted into evidence by Respondent. The voice message stated:

> Bennett's [sic] Talmage would you [give] me a call when you a chance it's noon on Friday I think I have a proposal that's going to get this thing worked out So we may be able to get this thing wrapped up give me a call when you can obviously we've got a pending deadline so sooner the better.

<u>June 9, 2017 – Recorded Telephone Conversation</u>

Sansone returned the call to Newton on June 9, 2017, and without Newton's knowledge, recorded the phone conversation. Respondent submitted a transcript of that phone call into evidence at the hearing, which stated:

> Reception: Good morning NewtonBarth, this is Claire speaking, how may I assist you?

6

Sansone:    Hi, Ben Sansone calling for Talmage.

Reception:    Sure, Ben, give me one moment.

Sansone:    Thanks.

Newton:    Talmage.

Sansone:    Talmage, Ben, what's going on?

Newton:    Okay. ***I think I have kind of gotten everybody to come around*** on our side. Here's what I would propose doing. ***I would say that we continue out whatever deadline for whatever period you are convenient with to give me time to put together a written settlement agreement for your review. It would more or less be this.*** There would be no money changing hands on either side. ***It would be more or less a mutual walk-away, but it would have some things in there that I think you would not have a hard time agreeing to*** from our conversation at – at court last month, some of them just an agreement that you are not going to provide people Shannon [Metzger]'s home address, and then ***the big one being more or less a, you know, an agreement resolving all of these disputes with the exception saying that if this judgment issue comes up, it's more of [sic] less cut out of the settlement agreement***, that in the event it ever is brought up, you two are going to have to deal with that. That means if you are sued you can bring him in, if he is sued he can bring you it. It's the one cutout provision here.

Sansone:    ***We will figure that out.*** But I mean, that's not a dispute that's between us, either one of our filings so I don't know how –

Newton:    That is correct, yeah.

Sansone:    It wouldn't be addressed by just us resolving this anyway, so I don't know why we have to specifically drop that out, but ***I will keep an open mind.***

Newton:    You know why. Just because it –

Sansone:    No, I mean if you are just – Actually, I think I know why. You know why because is Shannon is Shannon or is there a reason for –

Newton:    Yeah, that's more [or] less. I still maintain that this is in both your best interest which is why I am working so hard to get this done. ***But I want to have language in there that you are comfortable with, that he is, but I've got to craft it. Are you comfortable with that as far as the pending deadline.*** I will confirm that with you in writing, that I'm drafting a settlement agreement, we will push out this kind of artificial deadline that we created, whatever period you are comfortable with.

Sansone:   No, ***that's fine.*** I mean, listen, what I don't want to have happen, and I don't think it would be your fault, but it might be on your client. I do not want – If we are going to get this thing resolved, I just want to get it done. I do not want to –

Newton:   I couldn't agree more. We need to get this done.

Sansone:   Exactly. ***I don't want to be going back and forth for three months.*** Again, I know Shannon and I don't want to belabor the point, but he likes to delay, delay, delay everything. ***I don't want this to be a three-month process and then nothing happens.***

Newton:   Understood.

Sansone:   ***But, yeah, otherwise, I'd say, yeah, why don't we file some sort of consent memo with the court extending for another, let's say, 30 days on us filing our ammended [sic] petitions*** so we have some type of deadline.

Newton:   That's fine. I will draft something over to you for your approval. I will just mark your signature block by consent but I will have you approve it by e-mail.

Sansone:   That's fine.

Newton:   And I will just call you after I sent it. And then ***I will get cracking on this draft and get it over to you hopefully within the next week.***

Sansone:   Okay. And I will tell you my two cents is that the release is, simpler the better in this situation.

Newton:   I do not disagree.

Sansone:   Okay. All right. All right, very good, sir. I look forward to –

Newton:   Talk to you soon.

Sansone:   All right.

<u>Email Exchange</u>

Later that day, Newton sent Sansone an email, and the two exchanged several more emails that afternoon. The email exchange was submitted into evidence by both Appellant and Respondent at the motion to enforce settlement hearing. Newton's first email was sent at 12:34

8

p.m. on June 9, 2017. A document labeled "Motion to Continue" was attached to the email, although the attachment was not submitted into evidence. The email stated:

> Ben,
>
> ***This will confirm our conversation this afternoon. I would like to extend the deadline for filing amended pleadings an additional 30-days to allow me to circulate a settlement proposal which I hope resolves this litigation.*** I have attached a draft of that motion [to continue] hereto – please review and approve.
>
> As the 05/12 filing was a court order, do you think I need to walk through a copy of this motion today with the duty judge, or are you comfortable just filing the motion?
>
> Talmage E. Newton IV

At 1:35 p.m., Sansone replied to Newton's email and stated:

> Looks fine. Not worried about walking it thru, that's up to you.

Newton sent Sansone an email back at 1:58 p.m. that said:

> ***Okay if I add 'pass for settlement' language?*** Maybe ask that it go on a 60-day dismissal docket? ***That should alleviate the need to walk through.***

Sansone replied at 2:00 p.m. and stated:

> ***No pass for settlement… terms are still too vague right now.***

Newton replied at 2:22 p.m. and stated:

> Fair enough. I will just add a request that the matter be reset for status 30+ days out. Fine?

At 4:22 p.m., Sansone replied:

> Yes. That's fine.

Respondent submitted an email into evidence that was sent by Sansone to Newton on July 13, 2017. The email largely discussed a particular client and a bankruptcy filing, which is of minimal relevance to whether a settlement agreement was reached. The email ended by stating:

9

At this time I am not inclined to agree to additional continuances on our current case as I believe it will be one issue after another that your client will want to pile into this release.

If we do not have this resolved in a timely manner I will be filing my amended petition which includes adding Shannon personally as well as contemporaneously filing a motion to enforce settlement based upon our agreement of a mutual dismissal of all claims by all parties, not including Shannon personally as he was not a party to the case.

I will keep discussions open with you until that time.

--

Ben Sansone

Respondent also submitted emails into evidence that were sent between Sansone and Newton on July 17, 2017. At 10:42 a.m., Newton sent the following email:

Ben,

My client has authorized me to offer a mutual dismissal of all claims, without prejudice. Each party to bear their own costs. Please file your dismissal by close of business today. Once the Court has accepted and approved the dismissal, a dismissal of the counter-claims will be filed.

This email may be used in the unlikely event any motion to compel settlement is required (which I do not anticipate).

Talmage E. Newton IV

It appears an email may be missing, as the next email submitted by Respondent at the motion hearing was another email from Newton to Sansone, sent at 11:10 a.m. that day, stating:

You [sic] counter-offer for a dismissal "with prejudice" is rejected. I have been authorized to hold open my client's offer of a dismissal without prejudice open [sic] until 5pm today.

Talmage E. Newton IV

Respondent's final email in this chain was Sansone's response, sent to Newton at 11:42 a.m., stating:

10

Your emails are incorrect and do not reflect the settlement agreement we made many weeks ago. My suggestion to dismiss with prejudice was not a counteroffer, but a suggestion in lieu of a release you are apparently having a hard time drafting.

Our agreement was a dismissal of all claims by both parties and you were working on a draft release. We have had several phone calls/emails over the last few weeks about overall terms needed in the release. I have not rejected any of your suggestions and agreed to 2 extensions of the current dismissal timeline to allow you time to draft the release. I have never received a draft release.

You called Friday to discuss JM's wish to now tie collateral matters into the release, such as a Campbell garnishment matter. It is obvious that this is the real reason JM is backing out of the settlement agreement.

I will offer a suggestion, I will add the collateral issue of all eFiling notices re JM cases received by me being forwarded to an attorney of JM's choosing. Otherwise Ill proceed as stated last week. JM has had motions to enforce settlement field [sic] against them before, in fact, even in front of Judge Jamieson. JM has often backed out of settlements in the past to try to get additional terms not agreed to.

Ben Sansone

Lastly, Respondent submitted an email conversation into evidence from August 22-23, 2017. At 12:13 p.m. on August 22, 2017, Newton sent an email to Pedroli, co-counsel for Respondent, that stated:

Mark,

Please confirm that NO additional notices of withdrawal will be filed until we agree on the appropriate language to be used.

Once you confirm this I should be able to finish up my draft with the client today and send it over for your review.

Thanks.

Talmage E. Newton IV

Pedroli responded on August 23, 2017, at 10:42 a.m. and stated:

11

> Talmage,
>
> Didn't hear from you yesterday. This afternoon is good for me to work on your draft with Ben. Tomorrow less so.

Newton responded later that morning at 11:12 a.m. and stated:

> Mark,
>
> I am unable to propose settlement terms to you. We will need to proceed with the motion hearing on Friday.
>
> Talmage E. Newton IV

After the trial court accepted the exhibits into evidence, both Appellant and Respondent argued their respective positions on whether a settlement agreement had been reached. The trial court took the motion under submission following the hearing on September 27, 2017, and ordered both parties to submit proposed findings of fact and conclusions of law.

## Initial Ruling of Trial Court

On March 12, 2018, the trial court ruled on Respondent's Motion to Enforce Settlement and For Sanctions. The court found that although settlement was discussed during the June 9, 2017 phone call,

> The recording of the phone call makes it clear that the essential terms of a settlement were not settled upon by the parties, and the phone call was instead part of an [sic] ongoing negotiations.

The court denied Respondent's Motion to Enforce Settlement and For Sanctions, and granted the oral motion for sanctions made by Appellant at the hearing.

## Motion to Reconsider

On May 23, 2018, Respondent filed a motion to reconsider and opposition to sanctions.

On May 30, 2018, the court entered an order stating:

> Plaintiffs motion for reconsideration of the a) Motion to enforce settlement and b) Motion for sanctions is taken under advisement. The Court will re-review the transcript and the record.

On June 8, 2018, the court entered an order titled "Order Nunc Pro Tunc Correcting March 12, 2018 Order Pertaing [sic] to the Plaintiff's Motion to Enforce Settlement." The trial court began the order by stating:

> On March 12, 2018, The Court entered an Order denying Plaintiff's Motion to Enforce Settlement and for Sanctions, however, the 3.12.2018 order was entered as a clerical error or error arising from oversight and pursuant to Rule 74.06 may be corrected by the Court at any time of its own initiative. The Court intended to sign and enter an Order in favor of Plaintiff ….

The trial court's order went on to find a valid, legally enforceable settlement agreement between Appellant and Respondent, the opposite conclusion that the court arrived at in the order of March 12, 2018.[3] The trial court ordered the parties "to execute a release releasing all named parties along with their agents and employees from all claims made in the Parties' Petitions, answers, and counterclaims." Lastly, the trial court ordered Appellant to pay Respondent $6,000 for reasonable and necessary attorney's fees.

## Initial Appeal

Appellant appealed the trial court's order. Upon receiving the notice of appeal, this Court issued an order directing Appellant to show cause why the appeal should not be dismissed for lack of a final, appealable judgment. After receiving Appellant's answer, this Court held the trial

---

[3] "The purpose of a nunc pro tunc amendment is to make the record conform to what was actually done where there is a basis in the record for the amendment. The function of such an amendment is to correct clerical omissions, mistakes or misprisions to make the record speak the truth by evidencing an act done or a judgment actually rendered at a prior time but not carried into or properly recorded in the record. They do not lie to correct judicial errors, mistakes or oversights, or to create a new record or to enter a judgment never made or one different from that actually rendered, albeit the judgment rendered was not the judgment the judge intended to make." Around The World Importing, Inc. v. Mercantile Tr. Co., N.A., 795 S.W.2d 85, 88 (Mo. App. E.D. 1990) (internal citations omitted).

The order denying Respondent's Motion to Enforce Settlement and For Sanctions was an interlocutory order, and prior to final judgment, "a court may open, amend, reverse or vacate an interlocutory order." Id. Further, "Missouri does not follow the doctrine that a motion once ruled on cannot be reconsidered." Id. Therefore, while the trial court erred in labeling the order a nunc pro tunc amendment, the error was harmless. The trial court still had jurisdiction over the case such that it was able to reconsider the motion.

13

court's order granting the motion to enforce settlement was an interlocutory order, and while the trial court's decision resolved all of the issues in the collateral equity action, the trial court had not entered judgment on the underlying suit. This Court dismissed the appeal without prejudice.

Appellant then filed a request for court order with the trial court, citing to this Court's order dismissing the appeal for lack of a final judgment.

### Motion for Entry of Judgment

The trial court held a hearing on Appellant's motion for entry of judgment and Respondent's motion for sanctions. Respondent filed a proposed judgment.

### Final Ruling of Trial Court

On December 10, 2018, the trial court entered judgment by signing Plaintiffs' Proposed Judgment, which stated in part:

> 11.  After hearing all the evidence and arguments of counsel, The Court finds a clear offer to settle was made by the Defendant's counsel on June 9, 2017. The defendant's counsel verbally described and offered the necessary terms for settlement and the Plaintiffs' counsel accepted. Therefore, this Court finds there was a valid and enforceable settlement agreement on June 9, 2017.
>
> …
>
> 13.  Defendant is liable for sanctions under Rule 55.03(c) as the actions above show it maintained a defense for an improper purpose ….

The judgment became final on January 10, 2019, and Appellant timely filed his notice of appeal.

### Points Relied On

In its first point, Appellant alleges the trial court erred by holding there was a valid and enforceable settlement agreement between the parties and in entering judgment in favor of Respondent because there was not sufficient evidence presented from which the trial court could determine that the parties had a meeting of the minds or had otherwise agreed to settle their

14

claims, in that the evidence before the trial court demonstrated a continuing settlement negotiation and not the mutuality required to settle the case with finality.

In its second point, Appellant alleges the trial court erred in imposing sanctions against Appellant because there was no evidence Appellant defended against the motion to enforce settlement for an improper purpose as enumerated in Rule 55.03(c),[4] in that Appellant did not believe the parties had reached settlement of the matter and was justifiably defending that position to the court through proper means.

### Standard of Review

When reviewing a trial court's judgment enforcing a settlement, we will affirm unless the judgment is against the weight of the evidence, there is no substantial evidence to support it, or the court erroneously applied or declared the law. Ste. Genevieve Cty. Levee Dist. #2 v. Luhr Bros., Inc., 288 S.W.3d 779, 782 (Mo. App. E.D. 2009); Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). "In reviewing a particular issue that is contested, the nature of the appellate court's review is directed by whether the matter contested is a question of fact or law." White v. Dir. of Revenue, 321 S.W.3d 298, 308 (Mo. banc 2010).

"In reviewing of questions of fact, the reviewing court will defer to the trial court's assessment of the evidence if any facts relevant to an issue are contested." Pearson v. Koster, 367 S.W.3d 36, 44 (Mo. banc 2012), citing White, 321 S.W.3d at 308. When evidence is uncontested in a court-tried civil case, the appellate court gives no deference to the trial court's findings. White, 321 S.W.3d at 308. "Evidence is uncontested in a court-tried civil case when the issue before the trial court involves only stipulated facts and does not involve resolution by the trial court of contested testimony; in that circumstance, the only question before the appellate

---

[4] All rule references are to Mo. R. Civ. P. 2018 unless otherwise indicated.

15

court is whether the trial court drew the proper legal conclusions from the facts stipulated. Id., citing Schroeder v. Horack, 592 S.W.2d 742, 744 (Mo. banc 1979).

"We will affirm the trial court's decision regarding the imposition of sanctions unless the court abused its discretion." Enos v. Ryder Auto. Operations, 73 S.W.3d 784, 791 (Mo. App. E.D. 2002), citing Brown v. Kirkham, 23 S.W.3d 880, 883 (Mo. App. W.D. 2000). "An abuse of discretion occurs when the court's order is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Brown, 23 S.W.3d at 882–83, citing Robin Farms, Inc. v. Beeler, 991 S.W.2d 182, 186 (Mo. App. W.D. 1999).

Discussion

Point I

In its first point on appeal, Appellant claims the trial court erred in holding there was a valid and enforceable settlement agreement between the parties because there was not sufficient evidence presented from which the trial court could conclude the parties had a meeting of the minds or had agreed to settle their claims.

"Contract law governs the question of whether the parties entered into an enforceable settlement agreement." St. Louis Union Stn. Holdings v. Discovery Channel Store, 301 S.W.3d 549, 552 (Mo. App. E.D. 2009), citing Emerick v. Mutual Benefit Life Ins. Co., 756 S.W.2d 513, 518 (Mo. banc 1988). "[T]o establish a legal, valid settlement agreement, one must prove the essential elements of a contract: offer, acceptance and consideration." Id., citing Tinucci v. R.V. Evans Co., 989 S.W.2d 181, 184 (Mo. App. E.D. 1998). "The creation of a valid settlement agreement requires a meeting of the minds and a mutual assent to the essential terms of the agreement." Ste. Genevieve Cty. Levee Dist. #2, 288 S.W.3d at 783, citing Emerick, 756 S.W.2d at 518.

16

Because Respondent was the party seeking to enforce the purported settlement, it had the burden to prove the existence of a settlement by clear, convincing, and satisfactory evidence. J.H. v. Brown, 331 S.W.3d 692, 699 (Mo. App. W.D. 2011). "Evidence is clear and convincing if it 'instantly tilts the scales in the affirmative when weighed against the evidence in opposition, such that the fact finder's mind is left with an abiding conviction that the evidence is true.'" Id., quoting In the Interest of T.S., 925 S.W.2d 486, 488 (Mo. App. E.D. 1996).

Before we begin our analysis of the issue, we must determine what evidence was before the trial court when it entered judgment. Respondent's brief cites to statements made by Sansone and Pedroli at the evidentiary hearing as facts. Appellant addressed this in its reply brief, taking issue with certain statements Respondent presented as proven facts and claiming the statements were instead counsel's argument. At the oral argument before this Court, Respondent claimed there was testimonial evidence presented at the evidentiary hearing by Sansone and Pedroli.

The record refutes this claim. At the evidentiary hearing, the trial court judge had a conversation with the parties on the record regarding whether testimony would be presented. Respondent was given the option to reset the hearing to a later date, if it so wished, to allow for testimonial evidence to be presented. Respondent chose not to, but rather stated:

> We believe this case was settled a long time ago, and we believe the documentary evidence should be enough for Your Honor to make that decision that a settlement was agreed to. So that being the case, we are going to admit the emails and the telephone transcript at this time.

Additionally, "[u]nsworn statements of trial counsel do not prove themselves or constitute evidence." Ezenwa v. Dir. of Revenue, State of Mo., 791 S.W.2d 854, 859 (Mo. App. W.D. 1990), citing Kettler v. Hampton, 365 S.W.2d 518, 523 (Mo. 1963). As no witnesses were called, and none of the attorneys present was sworn, there was no testimonial evidence before the trial court when it rendered judgment. The only evidence before the trial court in rendering

17

judgment was the documentary evidence admitted by Appellant and Respondent, outlined above in the statement of facts.

Because the only evidence before the trial court was the uncontested documentary evidence, we need not defer to the trial court's findings as the question before this Court is whether the trial court drew the proper legal conclusions from the facts stipulated. Therefore, we will affirm the trial court's decision to grant Respondent's motion to enforce settlement if our review of the documentary evidence shows Respondent proved the existence of the settlement agreement by clear and convincing evidence.

"The creation of a contract requires a definite offer and an unequivocal acceptance." Around The World Importing, Inc., 795 S.W.2d at 90, citing Hyken v. Travelers Ins. Co., 678 S.W.2d 454, 458 (Mo. App. E.D. 1984). "Negotiations or preliminary steps towards a contract do not constitute a contract." J.H., 331 S.W.3d at 699, quoting Gateway Exteriors, Inc. v. Suntide Homes, Inc., 882 S.W.2d 275, 279 (Mo. App. E.D. 1994). "To constitute an offer sufficient to result in a contract, the offer must be definite in its terms that the promises and performances required by each party are reasonably certain." Tinucci, 989 S.W.2d at 184, citing In re Estate of Munzert, 887 S.W.2d 764, 768 (Mo. App. E.D. 1994).

"A contract will be valid and enforceable even if some terms may be missing or left to be agreed upon as long as the essential terms are sufficiently definite to enable the court to give them exact meaning." Voyles v. Voyles, 388 S.W.3d 169, 173 (Mo. App. E.D. 2012), citing Vulgamott v. Perry, 154 S.W.3d 382, 390–91 (Mo. App. W.D. 2004). "What is essential depends on the agreement and its context." Shellabarger v. Shellabarger, 317 S.W.3d 77, 87 (Mo. App. E.D. 2010).

18

Respondent offered the following exchange in the June 9, 2017, conversation between Sansone and Newton as proof of offer and acceptance such that there was a meeting of the minds:

> Newton:   I think I have kind of gotten everybody to come around on our side.  Here's what I would propose doing.  I would say that we continue out whatever deadline for whatever period you are convenient with to give me time to put together a written settlement agreement for your review.  It would more or less be this.  There would be no money changing hands on either side.  It would be more or less a mutual walk-away, but it would have some things in there that I think you would not have a hard time agreeing to from our conversation at – at court last month, some of them just an agreement that you are not going to provide people Shannon's home address, and then the big one being more or less a, you know, an agreement resolving all of these disputes with the exception saying that if this judgment issue comes up, it's more of [sic] less cut out of the settlement agreement, that in the event it ever is brought up, you two are going to have to deal with that.  That means if you are sued you can bring him in, if he is sued he can bring you it.  It's the one cutout provision here.

> Sansone:   **"that's fine […]** if we are going to get this thing resolved, **I just want to get it done."**

> Newton:   **"I couldn't agree more.  We need to get this done."**

> Sansone:   Exactly.

> Newton:   "I will get cracking on this draft to get it over to you hopefully within the next week."

> Sansone:   "I will tell you my two cents is that the release is, simpler the better in this situation."

> Newton:   "I do not disagree."

Viewing the text in full, it is clear Newton proposed a continuance on the deadline to file amended pleadings for additional time to put together a written settlement agreement for review. Newton indicated the agreement would include several provisions, without detailing any of them.

Here, neither party disputes there were terms left to be agreed upon later.  Therefore, to determine whether there was an offer, we must first decide what the essential terms are, and determine if the terms were sufficiently definite to enable the court to give them exact meaning.

Respondent states the essential terms are 1) a mutual walk-away, no money changing hands; and 2) a cutout provision. Appellant does not dispute those being the essential terms, but rather claims the terms were too vague and had not yet been defined with sufficient clarity or finality. We agree.

The essential terms, a mutual walk-away and a cutout provision, are not sufficiently definite to allow a court to give them exact meaning. Respondent defined mutual walk-away as a dismissal of all claims with prejudice, with no money being exchanged between the parties. However, it is unclear how Respondent arrived at that definition. Here, the parties disagreed whether a mutual walk-away would be a dismissal with prejudice or without prejudice. The parties also disagreed about the cutout provision. Appellant made it clear to Respondent during the June 9, 2017, telephone conversation that the cutout provision was important and a potential deciding factor in whether to settle the lawsuit. Appellant also stated there would need to be carefully worded language regarding the cutout provision, and it would take time for Newton to craft it. Despite this information being communicated, Respondent argued the cutout provision regarding future liability was not an essential term, but rather a collateral issue. We agree with Appellant that the cutout provision was an essential term and a determining factor in whether there would be a settlement agreement; however, it was not sufficiently defined to enable the trial court to give it exact meaning.

Respondent claims Sansone accepted the offer when Sansone stated "**that's fine […]** if we are going to get this thing resolved, **I just want to get it done.**"

However, this remark by Sansone was not made in response to Newton's comment that he believed the parties would be able to come to an agreement and he would draft a proposal. After Newton inquired about continuing the deadline and discussed some of the terms he would include in a proposed settlement agreement, Sansone said, "We will figure that out," in reference

20

to the exact terms. He further told Newton, "I will keep an open mind," when reviewing the proposal. Sansone did not tell Newton "that's fine" regarding the purported offer. Rather, the conversation occurred as follows:

> Newton: Yeah, that's more [or] less. I still maintain that this is in both your best interest which is why I am working so hard to get this done. ***But I want to have language in there that you are comfortable with, that he is, but I've got to craft it. Are you comfortable with that as far as the pending deadline.*** I will confirm that with you in writing, that I'm drafting a settlement agreement, we will push out this kind of artificial deadline that we created, whatever period you are comfortable with.

> Sansone: No, ***that's fine.*** I mean, listen, what I don't want to have happen, and I don't think it would be your fault, but it might be on your client. I do not want – If we are going to get this thing resolved, I just want to get it done. I do not want to –

> Newton: I couldn't agree more. We need to get this done.

> Sansone: Exactly. ***I don't want to be going back and forth for three months.*** Again, I know Shannon and I don't want to belabor the point, but he likes to delay, delay, delay everything. ***I don't want this to be a three-month process and then nothing happens.***

The "acceptance" of Sansone by stating "that's fine" was not acceptance of a purported offer. Viewed in the proper context, Sansone's statement was responding to Newton asking Sansone if Sansone would consent to extending the pending deadline to allow Newton time to craft language that both Appellant and Respondent would be comfortable with. Additionally, in the email Newton sent later that day, Newton asked Sansone if he should add "pass for settlement" language to the continuance memorandum and Sansone responded, "No pass for settlement… terms are still too vague right now."

The uncontested evidence reveals Appellant did not make an offer, but was engaging in negotiations with Respondent. Further, the evidence shows Respondent never accepted any offer from Appellant. Because the evidence is not clear and convincing that a definite offer and unequivocal acceptance were made, the trial court erroneously applied the law to the uncontested

21

facts. As such, we reverse the decision of the trial court granting Respondent's motion to enforce settlement. Point I is granted.

## Point II

In Point II, Appellant claims the trial court abused its discretion in imposing sanctions pursuant to Rule 55.03 because there was no evidence Appellant's defense against the motion to enforce settlement was for any improper purpose in that Appellant did not believe the parties had reached settlement.

Rule 55.03 allows imposition of sanctions upon lawyers or parties who have committed or are responsible for presenting and maintaining a defense for an improper purpose. Rule 55.03(c)-(d). Here, the trial court found sanctions were justified under Rule 55.03 because Appellant's defense against Respondent's motion to enforce settlement was for an improper purpose. The trial court found Appellant agreed to settle with Respondent, and then reneged and forced Respondent to prosecute the motion to enforce settlement.

Having determined in Point I, *supra*, Appellant and Respondent had not entered into a settlement agreement, it was proper for Appellant to maintain its position and defend against the motion to enforce settlement. Because Appellant's defense against the motion to enforce settlement was not maintained for an improper purpose under Rule 55.03(c), sanctions were not appropriate and the trial court erred in imposing them. Point II is granted.

## Conclusion

The judgment of the trial court enforcing the settlement agreement, dismissing all claims of the parties with prejudice, and imposing sanctions against Appellant is reversed and the cause remanded for the trial court to reinstate Respondent's petition and Appellant's counterclaims to allow the parties to continue with discovery and proceed to trial.

22

_____
SHERRI B. SULLIVAN, J.

Mary K. Hoff, P.J., and
Angela T. Quigless, J., concur.